### TRAVIS v. NATIONAL CITY BANK OF NEW YORK.

#### E–8502.

District Court, E. D. New York.

May 12, 1938.

S. A. Raboy, of New York City, for plaintiff.

Shearman & Sterling, of New York City (Philip A. Carroll and Justus Sheffield, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

The motion is to remand the cause to the Supreme Court of the State of New York, from which court it was removed.

The complaint recites that on June 1, 1926 the United Steel Works Corporation (Vereinigte Stahlwerke Aktiengesellschaft), a German corporation, made and delivered in the United States a series of negotiable bonds in the aggregate principal sum of thirty million dollars. By the

terms of the bonds the Steel Corporation agreed to pay at maturity, June 1, 1951, at the principal office of Dillon, Read & Company, in the Borough of Manhattan, the face value thereof; and to pay interest semi-annually from June 1, 1926 to and including June 1, 1951, at the rate of six and one-half per cent. per annum on June 1 and December 1 of each year. Sinking fund provisions provided that the Steel Corporation was to pay to the fiscal agent for the benefit of the holders the redemption of the bonds by lot, the sum of three hundred thousand dollars semi-annually, beginning on December 1, 1926 to and including December 1, 1938, and thereafter the sum of nine hundred thousand dollars semi-annually to and including December 1, 1950.

The plaintiff alleges that she is the owner and holder of eleven bearer bonds of the face amount of one thousand dollars; and brings this action on behalf of herself and all holders similarly situated.

It is alleged that an agreement was entered into between the Steel Corporation and the National City Bank, the defendant, as American trustee, and Darmstaedter Und Nationalbank Kommanditgesellschaft Auf Aktien, of Berlin, a German corporation, as German trustee, wherein the defendant was designated as trustee for the benefit of the bondholders, and undertook to perform the duties imposed upon it as trustee. The bonds and agreement recite that they be deemed to be New York contracts and that the obligations thereunder be governed by the laws of the State of New York and the United States of America. The agreement empowered the defendant, in the event of default of payment of interest or of any sinking fund instalment, to protect the rights of the defendant as trustee and the rights of the holders of the bonds, by appropriate legal action.

Prior to December 1, 1933 the Steel Corporation announced to the holders of these bonds that the interest would not be paid; that it had failed to provide the fiscal agent with funds for payment accruing on December 1, 1933 and thereafter. No interest has been paid on the bonds except such interest as has been recovered by interest coupon holders in actions against the United States corporation in the courts of the State of New York. Judgments were recovered and paid out of property of the Steel Corporation. No instalment on the sinking fund was paid on December 1, 1933 nor any thereafter. There follows then the allegation of violation of the duty of the defendant as trustee. It is alleged that it is guilty of gross and wilful breach in that it failed to exercise the rights and powers given to it as trustee and committed acts in breach of the trust created. It is asserted: (a) that the defendant preferred its own claims over those of the bondholders; that since the time of the aforesaid defaults the defendant has received substantial amounts of money in reduction of indebtedness owing to it in its individual capacity; (b) that the defendant refused to apportion the sums received by it from the Steel Works Corporation or its subsidiaries between itself, individually, and the bondholders for which it acted as trustee; (c) that it refused to take any action with respect to the property and assets of the Steel Corporation and allowed the Steel Corporation, while in default, to withdraw and remove funds from its possession and from the jurisdiction of the courts of the State.

Other derelictions of duty of the trustee are alleged which need not be referred to.

The plaintiff alleging that it has no adequate remedy at law seeks to have the defendant removed as trustee and a successor trustee appointed, an accounting and other relief. The answer denies that the defendant was a substantial creditor of the Steel Corporation and denies dereliction of duty. It recites that on June 9, 1933 the German Reich promulgated a law which became effective July 1, 1933, in consequence of which it is alleged that there has been no default by the Steel Corporation under the indenture.

The defendant alleges that it never received from holders of twenty-five percent notice of any default by the Steel Corporation; also that no written request of the holders of one-fourth in interest in the principal amount of the bonds had been made to the trustee to take any steps for the enforcement of the rights of the trustees or bondholders.

The status of the plaintiff as the alleged holder of the eleven bonds sued on is challenged. It is alleged that they were held by one Charles H. Albers as receiver for the North Avenue State Bank and the First Italian State Bank of Chicago; that Albers had been appointed under the Illinois Banking Act, Ill.Rev.Stat.1937, c.

16½, § 1 et seq. At the time the plaintiff became the holder by assignment, she was a stenographer in the law office of the plaintiff's former attorney of record. It is alleged that the plaintiff became the holder at the instance and request of such former attorney of record or of the present attorney of record, and that at no time was she the owner of these bonds, or the owner of any legal title therein.

The petition for removal to this court shows that the defendant is a banking corporation organized and existing under the laws of the United States under the National Banking Act, 12 U.S.C.A. § 21 et seq.; that since its organization on or about July 17, 1865 its principal office for the transaction of business is in the State of New York; that since October 1, 1925 it has maintained continuously and now maintains in Berlin, Germany, an office which it established and has used and uses to facilitate and direct its financial operations in Germany and other countries of central Europe.

The petition further recites that from the pleadings it appears that the suit is of a civil nature in equity to which a corporation, organized under the laws of the United States, is a party; that it arises out of transactions involving international banking and out of other international or foreign financial operations; and that it is therefore removable into the District Court of the United States pursuant to the United States Code, title 12, § 632; 12 U.S.C.A. § 632, being the act of Congress of June 16, 1933, c. 89, § 15, 48 Stat. 184, as a new section, 25(b), to the act of Dec. 23, 1913, c. 6.

Title 12 U.S.Code, § 632, 12 U.S.C.A. § 632, provides:

"Jurisdiction of United States district courts in cases arising out of foreign banking; jurisdiction where Federal reserve bank a party.

"Notwithstanding any other provision of law all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law. Such removal shall not cause undue delay in the trial of such case and a case so removed shall have a place on the calendar of the United States court to which it is removed relative to that which it held on the State court from which it was removed. * * *"

The question propounded by this motion then is whether the suit is one "arising out of transactions involving international or foreign banking" within the meaning of the foregoing section.

In support of her motion to remand the plaintiff contends that the "foreign financial operations" alleged in the removal petition are not those of the defendant; nor are they such as are contemplated by the section. On the contrary it is urged that the transactions forming the subject matter of the complaint are those arising out of a trust relationship between the plaintiff and the defendant.

This is the weakness of the plaintiff's position. She seeks to limit the alleged relationship between herself as a bondholder and the defendant as a trustee under the mortgage as decisive of the nature of the transactions involved. Manifestly this is impossible for the defendant, while nominally sued as an individual, owed no greater duty to her than was owed to any other bondholder; and such duty as is owed to all arises, as the complaint indicates, out of the trust indenture. This instrument defines the relationship between the defendant and the Steel Corporation. The complaint recites no "transaction" between the plaintiff and the defendant. It seems too clear for disputation that the "operations" forming the subject matter of this complaint are those inherent in and arising out of the trust indenture and in consequence relate to transactions between the Steel Corporation and the defendant.

The inquiry is therefore narrowed to determining whether those transactions involve international or foreign banking or international or foreign financial opera-

366

tions within the meaning of title 12 U.S. Code, § 632, 12 U.S.C.A. § 632. On the face of it it would seem that the creation of a trust indenture by a German corporation, which provides for an issue of bonds of the aggregate face value of thirty million dollars, of which the trust res is real estate located in Germany, one of the two trustees named therein being a German corporation and the other an American corporation, and which contemplates the sale and distribution of the securities to American holders, is an international financial operation. But the plaintiff asserts that the expression "international financial operation" is not to be given a general or dictionary meaning. She seeks to arrive at its specific connotation by a historical survey of the Federal Reserve Act.

So it is urged that the phrase "international or foreign financial operations" is to be interpreted by reference to title 12 U. S.Code, § 611, 12 U.S.C.A. § 611; and it is contended that its meaning and purpose in this earlier section must be the meaning and purpose of the phrase as used in the act of 1933. Brown v. Duchesne, 19 How. 183, 15 L.Ed. 595; Pott v. Arthur, 104 U.S. 735, 26 L.Ed. 909. Plaintiff pursues the argument that the debates and committee hearings at the time that the earlier statute was adopted show that the purpose was to authorize the creation of corporations to meet a new international situation calling for a new kind of financing of our foreign trade, i. e., the making of long term loans. In the Senate debate, as appears from the Congressional Record, vol. 58, parts 5 and 8 (66th Congress, 1st Session) Senator Edge is reported to have said:

"It provides for the incorporation of banks to engage in foreign business to be entirely under the supervision and control of the Federal Reserve Board, * * *. When an American producer or manufacturer sells a bill of goods abroad under present conditions, * * * the credit demanded is practically impossible, so far as the individual producer or manufacturer is concerned. That situation will be relieved through the incorporation of these banks * * *. These banks will then be in a position to take the securities offered to the American manufacturer or producer, so that he can turn the securities into the bank under regular ordinary banking conditions and form. On those securities he receives the amount of the bills that would oth-

erwise be paid him abroad if credit conditions were anything like normal. The bank in turn, * * * will hold the securities of various kinds * * * under supervision of the Federal Reserve Board * * * to issue bonds or debentures to the American public. * * *

"Our banks at the present time are not in a position to finance foreign sales, and it is necessary * * * that we supplement the banking system in this carefully protected manner."

In effect, powers of such a corporation are specifically defined in title 12 U.S. Code, § 615, 12 U.S.C.A. § 615. Such corporations may deal in drafts, checks, bills of exchange, acceptances and other evidences of indebtedness; may purchase and sell securities; issue letters of credit, purchase and sell coin, bullion, and exchange, borrow and loan money, issue debentures, bonds and notes, accept deposits, etc. In consequence the conclusion is sought that since the only corporation involved in the pending suit is a national bank, the indenture does not describe a power included within those specifically defined in title 12, U.S.Code, § 615, 12 U.S.C.A. § 615; and moreover it is asserted that the defendant is not such a corporation the organization of which is provided for in section 611 of that title. Moreover it is asserted that since the functions to be performed by the defendant are those merely of a trustee, such functions do not fall within transactions involving "foreign banking" or "international * * * financial operations." It is said banking does not include trust finance. Mercantile Nat. Bank v. New York, 121 U.S. 138, 7 S.Ct. 826, 30 L.Ed. 895.

It is idle to contend that because the foreign financial operations were those of the German corporation and not of the defendant the removal statute is not applicable; for the language of title 12 U.S. Code, § 632, 12 U.S.C.A. § 632, clearly states that the defendant may remove if any corporation organized under the laws of the United States shall be a party in a suit arising out of transactions involving foreign banking or international financial operations. As I have already said, the complaint discloses that the defendant was involved in foreign financial operations.

■ There is fallacy in attempting to limit title 12 U.S.Code, § 632, 12 U.S.C.A. § 632, to corporations organized under the law known as the Edge Act; Title 12 U.S.

Code, § 611, 12 U.S.C.A. § 611. That act did contemplate the organization of corporations to do foreign banking with the powers set up in section 615; but section 632, which was enacted fourteen years later, does not specifically or by necessary implication restrict its provisions to so called Edge corporations. On the contrary the later act refers to "any corporation organized under the laws of the United States" and the mere similarity of phrase does not compel the conclusion that the powers of such corporation were the restricted powers of the Edge corporations as defined in section 615. The Edge Act did not in terms or otherwise restrict the powers of national banks then in existence, nor was it the purpose of the Edge Act in any way to restrict them. On the contrary the object of the Edge Act was to make possible the organization of a new kind of corporation so that foreign banking, which had been theretofore enjoyed by but a limited number of our American banks, could be extended. So much clearly appears from the House Report, No. 408 (66th Congress, 1st Session) made by the House Banking and Currency Committee, when the Edge bill was under consideration. The report states:

"This is a bill to provide a general act, similar in some respects to the National Banking Act, for the federal incorporation of financial institutions 'principally engaged in international or foreign banking' or 'principally engaged in such phases of international or foreign financial operations as may be necessary to facilitate the export of goods * * * from the United States.' The language quoted is from the amendment to section 25 of the Federal Reserve Act, approved September 7, 1916, and from the amendment to the same section approved September 17, 1919.

"It will be remembered that in order to furnish American banking facilities * * * the Federal Reserve Act, as originally passed, provided in section 25 that any national banking association * * * may establish branches in foreign countries.

* * * Under the authority so granted only a few large banks established branches and the only bank taking extensive advantage of the opportunity was the National City Bank of New York City[1] which now has seventy branches throughout the world.

"As it was felt that the financing of foreign trade should not be left wholly to a few very large banks, the amendment of September 7, 1916 was passed, giving national banks with a capital and surplus of a million dollars an opportunity to cooperate. * * *

"As already indicated, two classes of institutions are to be incorporated under this act, though there may not always be a very clear line of demarcation between— one doing principally a banking business, like that done by the eight international banking corporations, already organized, and the other doing principally investment business, taking long time paper, including bonds and mortgages, and issuing their own debentures against them. * * *"

■ It thus appears that at the time that the Edge Act was adopted, the National City Bank, the defendant herein, had been carrying on the business of foreign banking and indeed was specifically reported as the only bank which had taken extensive advantage of the opportunity afforded under the provisions of the Federal Reserve Act as it then stood. Section 615 of title 12 U.S.Code, 12 U.S.C.A. § 615, did not limit the powers of banking corporations then in existence and engaging in foreign banking. Thus there is nothing in the act under consideration which compels a limitation of the kind of corporation referred to therein to the type known as the Edge corporation. It must follow that the term "international or foreign financial operations" should not be limited by reference to section 611 and section 615 of title 12 U.S.Code, 12 U.S.C.A. §§ 611, 615. With this broader interpretation, I conclude that the tests of the removal statute have been met. The motion to remand is accordingly denied.

Settle order on notice.

---

1 The defendant herein.