WALLACH, Circuit Judge,
dissenting-in-part.
I join the majority’s opinion to the extent it apples the Supreme Court’s decision in Halo on the issue of enhanced damages for willful infringement under 35 *1365 U.S.C. § 284 (2012). See Halo Elecs. Inc. v. Pulse Elecs., Inc., 186 S.Ct. 1923 (2016). However, for the reasons articulated in my original dissent, see WesternGeco L.L.C. v. ION Geophysical Corp. (WesternGeco II), 791 F.3d 1340, 1354-64 (Fed. Cir. 2015) (Wallach, J., dissenting-in-part), I dissent-in-part from today’s panel opinion, which reinstates our earlier opinion “in all other respects.” Maj. Op. at 1360.
The majority misunderstands the import of its prior holding, stating that my original dissent-in-part was from the panel’s “holding that WestemGeco was not entitled to lost profits resulting from foreign uses of its patented invention.” Id. at 1360. It is of course uncontroversial that paten-tees are not entitled to lost profits resulting from foreign uses of a patented invention. See Brown v. Duchesne, 60 U.S. (19 How.) 183, 195-96, 15 L.Ed. 595 (1856) (“[T]he use of [the invention] outside of the jurisdiction of -the United States is not an infringement of his rights, and he has no claim to any compensation for the profit or advantage the party may derive from it.”).
Patentees are entitled, however, to lost profit's resulting from infringement under the laws of the United States, which is what the jury found below, WesternGeco II, 791 F.3d at 1342 (“The jury found infringement — ”), what the district court found, id. at' 1343 (“[T]he [district] court granted summary judgment of infringement,”), and what was affirmed by this court on appeal, id. at 1347-49 (noting, inter alia, “the correctness of the infringement finding”).
The key issue left unaddressed in the now-reinstated opinion’s analysis is: When a patent holder successfully demonstrates both patent infringement under United States law and foreign lost profits, what degree of connéction must exist between the two before the foreign activity may be used to measure the plaintiffs damages?[1] *1366 Put another way, left unanswered is the question of where we must draw the line as to when patented products or services made, used, or sold abroad (or some combination of these) may be considered in calculating damages flowing from infringement under Title 35 of the United States Code. The issue is not one of infringement, where foreign use generally does not count,[2] but one of damages, where it may.
Rather than grapple with this difficult question of proximity, the majority avoids it altogether, considering the foreign lost profits in this case to relate' solely to foreign use and to be wholly disconnected from the infringement found by the jury. By reinstating our earlier decision, the majority repeats, out of context, the statement from Power Integrations that “ ‘the entirely extraterritorial production, use, or sale of an invention patented in the United States is an independent, intervening act that, under almost all circumstances, cuts off the chain of causation initiated by an act of domestic infringement.’” WesternGeco II, 791 F.3d at 1351 (quoting Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1371-72 (Fed. Cir. 2013)).[3]
The statement in Power Integrations, however, addressed the patentee’s argu-
ment that “having established one or more acts of direct infringement in the United States,” the plaintiff should be able to “recover damages for [the defendant’s] worldwide sales of the patented invention because those foreign sales were the direct, foreseeable result of [the defendant’s] domestic infringement.” 711 F.3d at 1371. If the statement is read too broadly, such that it prohibits any consideration of foreign activities when measuring damages, it conflicts with Supreme Court precedent holding that ordinary sales abroad can in some cases be used to measure damages resulting from domestic infringement. See Goulds’ Mfg. Co. v. Cowing, 105 U.S. 253, 254-55, 26 L.Ed. 987 (1881); Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U.S. 641, 650, 35 S.Ct. 221, 59 L.Ed. 398 (1915) (discussing Goulds’); see also WesternGeco L.L.C. v. ION Geophysical Corp., 621 Fed.Appx. 663, 664 (Fed. Cir. 2015) (9-3 decision denying the petition for rehearing en banc) (Wallach, J., dissenting); WesternGeco II, 791 F.3d at 1354-64 (Wallach, J., dissenting-in-part). Such a conflict should serve as a red flag, indicating that the approach taken by the panel may belong to the class of “ ‘unduly rigid’ ” rules the Supreme Court has repeatedly cautioned against, including in its decision *1367 that led to the present remand. Halo, 136 S.Ct. at 1932 (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., — U.S. -, 134 S.Ct. 1749, 1755, 188 L.Ed.2d 816 (2014)).
Not only is the approach taken by the majority unduly rigid, it is in substantial tension with Supreme Court guidance on the specific issue of (1) infringement under United States law followed by (2) use on the high seas. Duchesne — the very case cited by the majority for the proposition that lost profits based on foreign use are not compensable — illuminates at least one circumstance under which such foreign use is “compens[able]”: Where the patented invention is “manufactured” or “sold” in the United States, the defendant is “justly answerable for” the resulting “advantage which [he] derived from the use of th[e] improvement ... on the high seas.” 60 U.S. (19 How.) at 196 (emphases added); see also WesternGeco II, 791 F.3d at 1362 (Wallach, J., dissenting-in-part) (discussing Duchesne). The compensation in such a case is not for the foreign use itself, but for the damages caused when the defendant “diminished the value of [the plaintiffs] property” by “compet[ing] with the plaintiff,” in the United States, “where the plaintiff was entitled to ... exclusive use.” Duchesne, 60 U.S. (19 How.) at 196 (emphasis added).
In reinstating its earlier decision, the majority, expresses no concern for the consequences that may result from that decision. Creative lawyers, for example, may seek to insulate their clients from infringement liability by structuring market transactions so as to distance the infringer from the foreign activities, seeking to mirror the present case in which ION sells the device in question “to its customers, who perform surveys” on the high seas- “on behalf of oil companies.” WesternGeco II, 791 F.3d at 1343. When done for liability-avoidance reasons, such a change in form can increase costs without altering the underlying economic substance of the transaction.
Sueh efforts — and perhaps other unforeseen industry responses — would''not only be wasteful, but would also result in unfairness to the patent owner, whose loss from the infringement remains the same regardless of the number of entities involved or the complexity of the underlying transactions. So long as there is a sufficient connection between the infringement and the foreign activity, plaintiffs who successfully establish infringement under United States law should be able to rely on foreign activities to measure those damages adequate to “return the patent owner to the financial position he would have occupied but for the infringement.” Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72. F.3d 872, 881 (Fed. Cir. 1995).
Formulating a proper proximity standard — i.e., a standard that can be used to determine the sufficiency of the connection between infringement under United States law and foreign lost profits — is no easy task. There are some guideposts, however. For example, our case law has established that- a party will not necessarily be able to recover damages equal to lost foreign sales simply because those lost sales would not have occurred “but for” the domestic infringement. Power Integrations, 711 F.3d at 1370 (finding the connection insufficient despite the argument of Power- Integrations that it was entitled to damages based upon lost foreign sales it “would have made but for Fairchild’s domestic infringement” (emphasis added)). It has established that “[w]here a physical product is being employed to measure damages for the infringing use of patented methods,” the patentee may recover “when and only when” one of the actions specified in 35 U.S.C. § 271(a) (e.g., selling) “for that *1368 unit” - -takes place in the United States, “even if others of the listed activities for that unit (e.g., making, using) take place abroad.” Carnegie Mellon Univ. v. Marvell Tech Grp., Ltd., 807 F.3d 1283, 1306 (Fed. Cir. 2015).
' A unifying theme from these cases and others cited in my original dissent is that the appropriate measure of damages must bear some relation to the extent of the infringement in the United States. Thus, on the one hand, where the volume of non-infringing sales is independent of the extent of United States infringement, those sales should not be used as a measure of damages flowing from the domestic infringement. For example, where a product is designed in the United States by an “infringing use of [the] patented method[ ],” id. and units of the product are then “manufactured, sold, and used abroad,” the number of units produced abroad bears little or no relationship to the extent of the infringement in the United States, id. at 1305 (internal quotation marks and citation omitted). This is because once a product is designed, an unlimited number of non-infringing; units may be produced from that design.
At the other extreme, there may be a one-to-one relationship, or nearly so, between the infringement in the United States and the non-infringing foreign activity. In this case, each non-infringing unit or activity bearing such a one-to-one relationship with the infringing unit or activity is relevant to the damages calculation. See, e.g., R.R. Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1519 (Fed. Cir. 1984) (Where -a certain number of infringing “carsets” are manufactured in the United States and that same number is sold in a foreign country, each non-infringing foreign sale is relevant.); cf. State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F,2d 1573, 1575 (Fed. Cir. 1989) (Where a patented method is used to produce each non-infringing water heater, the number of water heaters sold is relevant to the damages calculation.).
The present case appears to lie somewhere in between these extremes. As described by the majority, the patent-practicing devices sold by ION are combined (and then used) in non-infringing streamer systems on the high seas, in a manner that would infringe if the combination occurred within the United States. See WesternGeco II, 791 F.3d at 1348. Because each streamer system contains some number of devices-, id, at 1343, the volume of infringing activity in the United States bears some relationship to the number of streamer systems used on the high seas, and the number of streamer systems in turn bears some relationship to the volume of lost sales. At the same time, however, because a given streamer system could presumably be used more than once, the volume of infringing activity in .the United States may not bear a one-to-one relationship with the volume of lost sales; As with damages questions generally, complex factual issues such as these may exist regarding the relationship between the infringing acts and. the units or activities used to measure the patentee’s resulting losses.
The importance of such complex factual issues to the damages calculation explains why discretion is afforded to district courts and juries in arriving at an -appropriate damages figure. See AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1333 (Fed. Cir. 2015) (“The amount of damages awarded to a patentee ... is ... reviewed for clear error, while the methodology underlying the court’s damages computation is reviewed for abuse of discretion.” (emphases added)); Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1310 (Fed. Cir. 2009) (“We review the jury’s determination of the amount of damages, an issue *1369 of fact, for substantial evidence.” (emphasis added)). An unduly rigid rule barring the district court from considering foreign lost profits even when those lost profits bear a sufficient relationship to domestic infringement improperly cabins this discretion, encourages market inefficiency, and threatens to deprive plaintiffs of deserved compensation in appropriate cases. Accordingly, I again respectfully dissent-in-part,

. According to the majority, "the issue of lost profits is not properly before [this court],” Maj. Op. at 1361 n.l, because ”[t]he scope of the Supreme Court’s' [grant certiorari, vacate, and remand ('GVR') ] order was limited to the second question [presented],” i.e., “ '[whether the Court should hold this Petition for Halo and Stryker [Corp. v. Zimmer, Inc., — U.S. -, 136 S.Ct. 356, 193 L.Ed.2d 289 (2015) (mem.)],"' Id. (quoting Petition for Writ of Certiorari, WestemGeco LLC v. ION Geophysical Corp., No. 2015-1085, 2016 WL 792196, at *1 (U.S. Feb. 26, 2016)). However, the majority reads the Supreme Court’s GVR Order too narrowly. First, although the Supreme Court did not grant certiorari on the question of foreign lost profits in Halo, "a denial of cer-tiorari has no precedential value.” Cty. of Sonoma v. Isbell, 439 U.S. 996, 996,- 99 S.Ct. 597, 58 L.Ed.2d 669 (1978). Second, the.Order does not limit this court's review to a specific issue or question presented, as many GVR orders do.. See, e.g., Herrmann v. Rogers, 358 U.S. 332, 332, 79 S.Ct. 353, 3 L.Ed.2d 345 (1959) (limiting the appellate court’s review on remand to a finite issue of Idaho property law). The GVR Order, in its entirety, provides: ■
On petition for writ of certiorari to the United States Court of Appeals for the Federal Circuit. Petition for writ of certiorari granted. Judgment vacated, ánd case remanded to the United States Court of Appeals for the Federal Circuit for further consideration in light of Halo....
Justice ALITO took no part in the consideration or decision of this petition.
WestemGeco LLC v. ION Geophysical Corp., — U.S. -, 136 S.Ct. 2486, 195 L.Ed.2d 820 (2016). The Supreme - Court’s only directive was that this court reconsider the pri- or opinion "in light of Halo," id. which overturns the two-part test for enhanced damages and the tripartite framework for appellate review in In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007) (en banc). See generally Halo, 136 S.Ct. 1923 (2016). The Supreme Court neither directly addressed the ' merits of this court’s holding on the issue of •damages associated with both infringement under United States law and Use' on the high seas, nor does it preclude their consideration. See Hah Elees., Inc. v. Pulse Elees.-, Inc., Nos. 2013-1472, -1656, 831 F.3d 1369, 1373, 2016 WL 4151239, at *2 (Fed. Cir. Aug. 5, 2016) ("[T]he Supreme Court’s review was limited *1366 to the issue of enhanced damages and left undisturbed the judgments on other is-sues_”); see also Maj. Op. at 1361 ("The Supreme Court’s Halo decision was solely concerned with the question of enhanced damages for patent infringement under 35 U.S.C. § 284 and does not affect other aspects of our earlier opinion.” (footnote omitted)).

. Indeed, even in the infringement context, "foreign activity ... can have an impact on the rights of a United States patent owner.” Lexmark Int’l, Inc. v. Impression Prods., Inc,, 816 F.3d 721, 784 (Fed. Cir. 2016) (en banc) (10-2 decision) (Dyk, J., dissenting).

. As recognized elsewhere in Power Integrations, the central issue in foreign lost profits cases is not whether the use or sale is '■‘entirely extraterritorial,” but the nature and degree of connection between the underlying infringement and the (perhaps entirely extraterritorial) foreign activity that most proximately led to the lost profits. See 711 F.3d at 1371 (noting that plaintiffs cited no case law supporting the use of “sales consummated in foreign markets, regardless of any connection to infringing activity in the United States,” when calculating damages (emphasis added)); Power Integrations, Inc. v. Fairchild Semiconductor Int’l, Inc., 589 F.Supp.2d 505, 511 (D. Del. 2008) (expressing concern that the "estimate [of the plaintiff’s expert witness] of $30 million in damages was not related to parts that were manufactured, lised, or sold in the United States by [the defendant]”).